IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MICHAEL E. DEMBY,        :
       :
       Petitioner,        :
       :
       v.        :      Civil Action No. 15-656-RGA
       :
DAVID PIERCE, Warden, and        :
ATTORNEY GENERAL OF THE        :
STATE OF DELAWARE,        :
       :
       Respondents.        :

---

## MEMORANDUM OPINION

Michael E. Demby. *Pro se* Petitioner.

Sean P. Lugg, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

September 30 , 2016
Wilmington, Delaware

*Richard G. Andrews*

ANDREWS, UNITED STATES DISTRICT JUDGE:

Pending before the Court is Petitioner Michael E. Demby's Application for a Writ of

Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition"). (D.I. 4)  The State filed an Answer in

opposition, contending that the Petition should be dismissed. (D.I. 10)  For the reasons

discussed, the Court will dismiss the Petition.

I.    BACKGROUND

The facts leading to Petitioner's arrest and conviction are as follows:

> In May and June 2012, the Delaware State Police led a multi-agency law
> enforcement team that was investigating drug sales in Kent County, Delaware.
> The team used wiretaps to monitor communications by Galen Brooks, the target
> of the investigation.  On May 26, 2012, the police heard a phone conversation
> between Brooks and [Petitioner], which led them to believe that a drug deal was
> about to take place.  Based on that call, the police established surveillance at the
> McKee Crossing Shopping Center, and at Brooks's father's home on Red Oak
> Drive in Dover.  In the next call, the police heard Brooks telling [Petitioner] to
> prepare a package of cocaine and to bring it to the buyer, who would be driving a
> Dodge Caravan.  Brooks told [Petitioner] that the price was $2400.  The police
> saw [Petitioner] leave the Red Oak Drive home and place a package in the trunk
> of a Honda parked at the house.  [Petitioner] and Brooks's brother, James, then
> got into the Honda and drove off.

> At the McKee Crossing Shopping Center, the police saw Dashawn Ayers seated
> in a Dodge Caravan in the parking lot.  [Petitioner] and James arrived in the
> Honda and parked next to the Caravan.  [Petitioner] got out of the Honda and got
> into the Caravan, while James went into a store in the shopping center.  After a
> few minutes, [Petitioner] got out of the Caravan and went into the store James had
> entered.  Shortly thereafter, the two men left the store, returned to the Honda, and
> drove away.  Ayers, driving the Caravan, also left the parking lot.

> One of the officers in the surveillance unit that was following Ayers instructed
> Delaware State Police Corporal Timothy Valeski to conduct a traffic stop on the
> Caravan.  Ayers produced his license, but when Valeski told him to exit the car,
> Ayers put the Caravan in gear and fled before the police could search it.  Valeski
> was instructed not to pursue Ayers for public safety reasons.

> After the meeting at the shopping center, the police contrived to monitor Brooks'
> phone conversations.  [Petitioner] called Brooks and told him that everything had
> gone well and that he had the money.  Brooks told [Petitioner] to keep $100 for

his participation and to give the remaining $2300 to Valerie Brooks, his mother. Valerie called Brooks a few minutes later to tell him that she received the money. Brooks told his mother to keep $50 for herself.

Ayers turned himself in to the Delaware State Police on June 1, 2012, stating that he knew he had outstanding warrants. The next day, Brooks and [Petitioner] had a telephone conversation in which Brooks agreed to give [Petitioner] one ounce of cocaine for the good work [Petitioner] had done. Police later observed an exchange of money between the two men. On June 14, 2012, the Delaware State Police arrested [Petitioner]. A Kent County Grand Jury returned an indictment against Ayers, [Petitioner], Brooks, and eleven other individuals. Ayers was charged with one count of Drug Dealing, one count of Aggravated Possession, and one count of Conspiracy Second Degree. [Petitioner] was charged with two counts of Drug Dealing, two counts of Aggravated Possession, two counts of Conspiracy Second Degree, one count of Criminal Solicitation Second Degree, and one count of Possession of Drug Paraphernalia.

Before trial, Ayers and [Petitioner] unsuccessfully moved to suppress the wiretap evidence. Ayers also filed a Motion to Sever, which was denied. The jury convicted Ayers on all counts. [Petitioner] was convicted of one count of Drug Dealing, one count of Aggravated Possession, one count of Conspiracy Second Degree, and one count of Possession of Drug Paraphernalia. He was acquitted on the remaining charges. Ayers and [Petitioner] filed separate appeals, which were consolidated for consideration and decision.

*Ayers v. State*, 97 A.3d 1037, 1038-39 (Del. 2014)(footnotes omitted).

The Delaware Supreme Court affirmed Petitioner's convictions on July 21, 2014, but held that the drug dealing and aggravated possession charges merged for purposes of sentencing. *Id*. at 1042. As a result, the case was remanded "for the sole purpose of merging the two charges and resentencing." *Id*. at 1041.

Petitioner filed a Motion for New Trial prior to resentencing, which the Superior Court denied. (D.I. 13 at 2) On January 15, 2016, in accordance with the Delaware Supreme Court's remand, the Superior Court merged the drug dealing and aggravated possession charges and resentenced Petitioner to twenty-seven years of incarceration, suspended after fifteen years for decreasing levels of supervision. (D.I. 13 at 3)

2

## II.     STANDARD OF REVIEW

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98-99 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99. Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to

3

"factual issues," whereas the unreasonable application standard of § 2254(d)(2) applies to "decisions").

## III.   DISCUSSION

The sole claim in Petitioner's timely filed § 2254 Petition asserts that the trial court violated his Sixth Amendment right to confront witnesses against him by improperly admitting into evidence wiretap recordings of conversations between Petitioner and Brooks, as well as conversations between Brooks and his mother Valerie, without "ensuring [that] a proper foundation for reliability and accuracy was established in determining a conspiracy existed." (D.I. 4 at 6; D.I. 15, *Demby v. State*, No. 667, 2013, State's Ans. Br., at 9)  The Delaware Supreme Court denied this argument as meritless. *See Ayers,* 97 A.3d at 1039-40.  Therefore, Petitioner will only be entitled to habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The Confrontation Clause of the Sixth Amendment provides, in relevant part, that "in all criminal prosecutions, the accused shall enjoy the . . . right to be confronted with the witnesses against him." U.S. Const. amend. VI.  In *Crawford v. Washington*, 541 US. 36 (2004) and its progeny, the United States Supreme Court held that the Confrontation Clause bars the admission of testimonial statements of witnesses absent from trial that are admitted to establish the truth of the matter asserted in the statement, unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *See Crawford*, 541 US. at 59, 60 n. 9 (2004); *see also Davis v. Washington*, 547 U.S. 813, 823-24 (2006).  A testimonial statement is a statement that is made during non-emergency circumstances and is a statement which the declarant would

4

objectively foresee might be used in the investigation or prosecution of a crime. *See United States v. Hinton*, 423 F.3d 355, 360 (3d Cir. 2005); *Davis*, 547 U.S. at 822.

The threshold question in every Confrontation Clause case is whether the challenged statement is testimonial and, if so, whether it was introduced to establish the truth of the matter asserted. *See Hinton*, 423 F.3d at 357. If the statement is not testimonial in nature, then the Confrontation Clause has no application. Notably, statements made by co-conspirators during the course of a conspiracy are non-testimonial. *See United States v. Bobb*, 471 F.3d 491, 499 (3d Cir. 2006)("party admissions and co-conspirator portions of disputed tape recordings are nontestimonial.").

Here, the Delaware Supreme Court's denial of Petitioner's Confrontation Clause claim was not contrary to clearly established Federal law, because the Delaware Supreme Court cited and applied *Crawford* in reaching its decision. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court also concludes that the Delaware Supreme Court's decision involved a reasonable application of *Crawford* and its progeny. When affirming Petitioner's conviction, the Delaware Supreme Court explained that

> [a] statement is testimonial and implicates the Confrontation Clause where it is given in non-emergency circumstances and the declarant would recognize that his statements could be used against him in subsequent formal proceedings. By contrast, a casual remark to an acquaintance is a nontestimonial statement. Similarly, ... statements made in furtherance of a conspiracy are nontestimonial.

*Ayers*, 97 A.3d at 1040. The Delaware Supreme Court then held that the "wiretap recordings are not testimonial under the Sixth Amendment because the declarants obviously did not expect their

5

statements to be used against them, and because the statements were made in furtherance of a conspiracy." *Id.*

The record in this case demonstrates that the statements in the wiretap recordings were made by co-conspirators who did not believe their statements were being heard by the authorities and would be available for use in a prosecution. Therefore, the Court concludes that that Delaware Supreme Court's holding regarding the non-testimonial nature of the wiretap recordings constituted a reasonable application of *Crawford* and its progeny. *See United States v. Hendricks*, 395 F.3d 173, 181 (3d Cir. 2005)(finding surreptitiously recorded conversations more similar to "a casual remark" than a "formal statement.").

However, Petitioner contends that, even if the wiretap recordings would be non-testimonial in other situations, the admission of the statements in his case violated the Confrontation Clause because two law enforcement officers testified and explained what the coded language in the wiretaps meant. *See Ayers*, 97 A.3d at 1040. For instance, the State called Special Agent Jeffrey Dunn of the Drug Enforcement Administration as an expert in drug investigations who testified that, based on his training and experience and his review of the recordings, Brooks and Petitioner were discussing a drug deal that involved the sale of cocaine. Dunn's testimony on direct examination is set forth below.

> Q.   Are you able to --- there's a discussion of "three." Are you able to tell the jury what they're talking about when they talk about three? Three what?
>
> A.   Yes. They're referring to three grams of a cutting material, and you could hear the one voice say GNC, which refers to the retail store, General Nutrition Center. A cutting material is a substance such as a dietary supplement that has a white powdery texture similar to cocaine that is used to add to actual cocaine that increases a drug dealer's profit.
>
> Q.   When they talk about three germs, what does that mean?

6

A.    Three grams. They're going to use three grams of that cutting material to add to the cocaine.

Q.    When the call says, "Take three germs and put it on the scizzy," do you know what that means?

A.    Yeah. It's a --- scizzy is referring to a scale so that they get the proper weight. Three grams is the proper weight.

(D.I. 15, *Demby v. State*, No. 667,2013, App. to the State's Ans. Br., at B-29 to B-30)  Dunn also

testified about the price and quantity of the cocaine.  *Id.* at B-30 to B-33.  After Dunn testified,

the State called Delaware State Police Detective Lloyd to testify, played one of the wiretap

recordings for the jury, and asked Lloyd to interpret the phrase "the one."  Lloyd opined that "the

one" referenced one ounce of cocaine.  (D.I. 15, *Demby v. State*, No. 667, 2014, Corrected

Appellant's Op. Br. on Appeal, at 14; D.I. 15, *Demby v. State*, No. 667, 2014, Corrected App. to

Appellant's Op. Br., at A-70)

The Delaware Supreme Court rejected Petitioner's argument that Dunn and Lloyd's

expert interpretive testimony transformed the wiretaps into testimonial statements, explaining:

> It is true that Dunn may have misinterpreted the coded language, but his interpretation was open to challenge during cross-examination.  In addition, [Petitioner][2] could have presented his own witnesses to testify that the wiretap recordings meant something entirely different.  In sum, admission of the wiretap recordings did not violate the Sixth Amendment.

*Ayers*, 97 A.3d at 1040.

The Court concludes that the Delaware Supreme Court reasonably applied *Crawford* and

its progeny in holding that Dunn and Lloyd's interpretive testimony did not transform the

wiretap recordings from non-testimonial to testimonial statements.  As the Delaware Supreme

---

[2]The original text stated "Ayers," but the Delaware Supreme Court used "Ayers" to mean Petitioner and his co-defendant Ayers.

Court noted, Petitioner could have challenged the witness' interpretations through cross-examination and also could have presented his own witnesses to testify that the wiretap recordings meant something entirely different. Since the wiretap conversations remained non-testimonial, the Delaware Supreme Court's rejection of the instant Confrontation Clause claim does not warrant habeas relief under § 2254(d).

## IV. PENDING MOTIONS

Petitioner filed two motions during the pendency of this proceeding: (1) a Motion for Leave to Retain Jurisdiction (D.I. 20); and (2) a Motion for Leave to Amend/Supplement Response to State's Answer (D.I. 21). As an initial matter, the Court notes that the Motion for Leave to Retain Jurisdiction requests the Court to stay his Petition while he expands the record on his Confrontation Clause claim via a Rule 61 motion he filed in the Superior Court on March 9, 2016, presumably because he then hopes to present an ineffective assistance of counsel claim related to that claim to the Superior Court at some unidentified time in the future. Consequently, the Court construes the Motion to be one requesting a stay of the instant proceeding and, so construed, denies the Motion for the following reasons.

As a general rule, a federal habeas court is only authorized to stay a habeas proceeding if the petition contains both exhausted and unexhausted claims, and the petitioner's ability to file a future habeas petition after proper exhaustion in the state courts will be clearly foreclosed by the expiration of AEDPA's one-year filing period. *See Rhines v. Weber*, 544 U.S. 269 (2005). The state court record and the record in this proceeding clearly demonstrate that Petitioner had exhausted state remedies for the sole Confrontation Clause Claim raised in his Petition at the time he filed his Petition. For instance, on October 1, 2015, the Court provided Petitioner with

8

an initial AEDPA Order informing him of AEDPA's requirement that he include in one § 2254 petition all the arguments he has to collaterally attack the state court judgment. (D.I. 7)  On November 17, 2015, Petitioner filed his AEDPA election form indicating his understanding of the exhaustion requirement and demonstrating his wish to proceed with his Petition as currently filed. (D.I. 8)  The State filed its Answer on February 5, 2016, explaining that the Petition was fully exhausted and ready to be adjudicated on the merits. (D.I. 14)  Petitioner did not file the instant Motion (construed as a motion to stay) until March 21, 2016. (D.I. 20)  Significantly, based on Petitioner's assertions in the Motion, it appears that the pending Rule 61motion is an attempt to obtain further support for his already exhausted Confrontation Clause Claim. Petitioner does not assert that the Rule 61 motion presents an ineffective assistance of counsel claim, nor does he assert that he wishes to amend the instant Petition to include an ineffective assistance of counsel claim.  The uncertainty surrounding Petitioner's actual intent is demonstrated by his contention that "the record needed to be expanded on the 'face-to-face' provision before he makes the argument charging ineffective assistance of counsel, an issue that will **more than likely** be back before this court based on some of the same factual conclusions." (D.I. 20 (emphasis added)).  Given these circumstances, the Court concludes that Petitioner has failed to demonstrate that the case should be stayed.

As for Petitioner's Motion for Leave to Amend/Supplement his Response, the Motion is granted, because the assertions in the Motion merely amplify the Confrontation Clause Claim already presented in his Petition and Response. The Court notes it considered the amplified argument during its review of the instant Petition.

9

## V.     CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas claims do not warrant relief. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

## VI.    CONCLUSION

For the reasons discussed, the Court denies the Petition without an evidentiary hearing. An appropriate Order will be entered.

10